**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In Re: TRANS-INDUSTRIES, INC., et al.,

    Debtors.

    Case Number: 08-14655

_____ /

    JUDGE PAUL D. BORMAN
    UNITED STATES DISTRICT COURT

Q TECHNOLOGY INC.,

    Appellant,

v.

DAVID W. ALLARD, Trustee,

    Appellee.

_____ /

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY'S ORDER DENYING APPELLANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT**

    Before the Court is Q Technology Inc.'s ("Q Technology") appeal of the Bankruptcy Court's October 22, 2008, Order Denying Defendant's Motion to Set Aside Default Judgment and for Leave to File an Answer and Affirmative Defenses, filed November 4, 2008. (Doc. No. 1). Appellee, Bankruptcy Trustee David W. Allard ("Trustee"), has responded. (Doc. No. 9). This Court heard oral argument on March 12, 2009. For the following reasons, this Court AFFIRMS Bankruptcy Court's decision.

**I. BACKGROUND**

    The debtor, Trans-Industries Inc., was a customer of Q Technology. (Def.'s Mot. to Set Aside Default and For Leave to File an Answer and Affirmative Defenses p. 5, Appellant's

1

Designation of Record on Appeal, Ex. 12 [hereinafter Def.'s Mot.]).  In the ninety days before Trans-Industries filed for bankruptcy, Trans-Industries made payments to Q Technology in the amount of $170,217.19, for products Q Technology had shipped to Trans-Industries.  (*Id.* at 6).

After Trans-Industries filed for bankruptcy, on April 3, 2006, the Trustee filed a complaint against Q Technology alleging that the $170,217.19 in payments that the debtor made to Q Technology constituted transfers and, as such, the payments are avoidable and recoverable by the Trustee. (Complaint 7-8, 10, Appellant's Designation of Record on Appeal, Ex. 1).  The Trustee served the complaint on Q Technology by first class mail on March 24, 2008.  (Certificate of Service, Appellant's Designation of Record on Appeal, Ex. 4).  The summons and complaint were addressed to an "Officer or Managing Agent" of Q Technology.  (*Id.*)  The Trustee reissued the summons and served Q Technology again on April 8, 2008, this time addressing the summons and complaint to Samuel Lee, the president of Q Technology. (Appellant's Designation of Record on Appeal, Ex. 7).

Mr. Lee received the summons and complaint in "late March or early April 2008."  (Lee Affidavit 2, Appellant's Designation of Record on Appeal, Ex. 15 [hereinafter Lee Affidavit]).  Q Technology did not answer the complaint because Mr. Lee believed that service of process could not be effectuated by first class mail, and had to be accomplished by personal service.  (*Id.* at 3).

The clerk entered a default against Q Technology on June 17, 2008, and the Trustee moved for a default judgment on June 23, 2008.  (Default Entry by Clerk, Appellant's Designation of Record on Appeal, Ex. 8; Application for Entry of Default Judgment and Affidavit in Support, Appellant's Designation of Record on Appeal, Ex. 9).  The Bankruptcy Court granted the Trustee's motion for default judgment on June 23, 2008, and ordered Q Technology to return $170,217.19,

to the debtor's estate. (Default Judgment, Appellant's Designation of Record on Appeal, Ex. 10).

Upon receipt of the default judgment, on or about July 1, 2008, Mr. Lee contacted his attorney, whom he had utilized for many years. (Lee Affidavit ¶ 5). His attorney asked him whether he had received notice of the complaint, and Mr. Lee told him that he had received service by first class mail only. (*Id*. at 6). The attorney then informed Mr. Lee that service by first class mail is a proper method of service in a bankruptcy proceeding. (*Id*. at 7-8). Mr. Lee averred that Q Technology did not intentionally refuse to answer the complaint, and had he understood the service rules, would have instructed his attorney to respond to the complaint. (*Id.* at 4, 8).

Mr. Lee's attorney contacted the Trustee and asked him to voluntarily set aside the default judgment. (Def.'s Mot. 9). When the Trustee refused to do so, Q Technology moved to set aside the default judgment on September 12, 2008. (Def.'s Mot. 10). Q Technology argued that the Bankruptcy Court should set aside the default judgment for the following reasons: 1) the Trustee would not suffer any prejudice; 2) Q Technology raised meritorious defenses; and 3) the default judgment was not entered as a result of culpable conduct by Q Technology. (Def.'s Mot. 9-10, 14). In the last sentence of Q Technology's brief in support of its motion to set aside default judgment, Q Technology asked the Bankruptcy Court to "find that Q Tech's failure to answer the Complaint was not culpable conduct and that its dereliction is excused for purposes of Rule 60(b)(1) and/or (6)." (Def.'s Mot. 15).

The Trustee opposed Q Technology's motion. (Trustee's Resp., Appellant's Designation of Record on Appeal, Ex. 14 [hereinafter Trustee's Resp.]). The Trustee argued that Q Technology's failure to answer the complaint due to ignorance of the law, disregard of multiple

3

service attempts, and delay in filing a motion to set aside the default judgment, was culpable conduct that led to the default and, therefore, the default judgment could not be set aside under Rule 60(b)(1). (*Id.* at 2-5). The Trustee further argued that the court should not consider the other two factors in Rule 60(b)(1), meritorious defense and prejudice, because Q Technology had not sustained its burden of showing that no culpable conduct led to the default judgment. (*Id.* at 5). In the event that the court considered the last two factors, the Trustee argued that Q Technology did not have a complete defense to the preference claim, and that the Trustee would be prejudiced because setting aside the default would hamper his efforts to expeditiously collect the property of the estate. (*Id.* at 5).

The Bankruptcy Court heard Q Technology's motion on October 22, 2008. (Bankruptcy Hr'g Tr., Oct. 22, 2008, Appellant's Designation of Record on Appeal, Ex. 25 [hereinafter Tr.]). At the beginning of the hearing, the court asked Q Technology whether Rule 60(b)(1) was the basis of its motion, and Q Technology's counsel responded, "That's correct." (Tr. 3). The court then asked Q Technology what its conduct was excusable neglect when Mr. Lee could have made a simple phone call to his Michigan attorney to verify whether service was proper. (Tr. 5-6). Q Technology responded that, in retrospect, Mr. Lee should have called his attorney but did not based on his past experience with civil actions in California in which personal service is required. (Tr. 6). Q Technology also argued that it had meritorious defenses, and setting aside default judgment would not prejudice the Trustee. (Tr. 7-8).

The Trustee argued that Q Technology could not prevail on the culpability factor and, therefore, the default judgment should not be set aside. (Tr. 8). When the court asked the Trustee whether the default judgment should be left in tact, even though the Trustee conceded that Q

Technology had meritorious defenses to at least part of the judgment, the Trustee argued that the full amount of the default judgment should remain intact because that is what the Trustee alleged in the preference complaint. (Tr. 12).

At the end of the hearing, the Bankruptcy Court made its findings on the record. First, based on Q Technology's statement at the beginning of the hearing, the court construed Q Technology's motion as a Rule 60(b)(1) motion, and then went on to discuss whether Q Technology had shown excusable neglect. (Tr. 14). The court assumed that neglect had occurred and turned to the question of whether the neglect was excusable. (Tr. 18). The court considered: the danger of prejudice to the other party, the length of the delay, the impact of the delay on the judicial proceedings, and the reason for delay, including whether the movant could control the delay and whether the movant acted in good faith. (Tr. 17). With respect to the first factor, prejudice, the court found that the Trustee had not been prejudiced. (Tr. 19). The court also found that the delay was minimal because after receiving the default judgment Q Technology retained counsel who pursued the matter immediately. (Tr. 19). Lastly, the court found that the reason for the delay was within Q Technology's control, as Mr. Lee could have prevented the default judgment by calling his attorney upon receipt of the complaint. (Tr. 22-23). The court ultimately held that Mr. Lee's mistake of law was not excusable neglect. (Tr. 24).

The Bankruptcy Court memorialized its oral opinion in an order issued on October 22, 2008. (Order Denying Defendant's Motion to Set Aside Default Judgment and For Leave to File an Answer and Affirmative Defenses, Oct. 22, 2008, Appellant's Designation of Record on Appeal, Ex. 19).

Thereafter, Q Technology filed its timely appeal with this Court. (Notice of Appeal,

Appellant's Designation of Record on Appeal, Ex. 20).

## II. STANDARD OF REVIEW

The parties agree that this Court should apply the "abuse of discretion" standard when reviewing the Bankruptcy Court's denial of Q Technology's Rule 60(b) motion. (Q Tech's Br. 9-10; Trustee's Br. 2); see *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002) ("We review the denial of appropriate relief under Rule 60 for abuse of discretion."). "'A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based.;" *Id., quoting Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997).

## III. ANALYSIS

Q Technology argues that the Bankruptcy Court abused its discretion when it denied Q Technology's Rule 60(b) motion, finding that Q Technology had not shown excusable neglect.

Fed. R. Civ. P. 60(b) provides, in pertinent part:

> **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc**. On a motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . .; (4) the judgment is void . . .; (5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

There are two tests that the Sixth Circuit applies to decide whether a default judgment should be set aside under Rule 60(b)(1). In *Jinks v. Allied Signal, Inc*., 250 F.3d 381, 386 (6th Cir. 2001), the Sixth Circuit instructed courts deciding whether neglect was excusable to consider several

factors: the length of the delay, the reason for the delay, whether the movant acted in good faith, the potential impact of the delay on judicial proceedings, and the danger of prejudice to the other party. *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993) (applying these factors to determine whether "neglect" is "excusable" under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure).

A different panel of the Sixth Circuit, in *Weiss v. St. Paul Fire and Marine Ins. Co.*, 283 F.3d 790, 794 (2002), applied a slightly different test:

> The seminal case in this circuit on Rule 60(b) motions to vacate default judgments is *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). In *United Coin Meter* we noted that Rule 60(b) is to be applied "equitably and liberally" in considering motions to vacate defaults and default judgments, *id.* at 845, and that the same factors that control a motion to vacate an entry of default under Rule 55(c) are also applicable in determining whether to vacate a default judgment: (1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default. *Id.*

The Court further opined:

> In *Waifersong*, we made it clear that a party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct. That burden may be carried, we said, only by meeting the requirements of Rule 60(b)(1), that is, by "demonstrat[ing] that his default was the product of mistake, inadvertence, surprise, or excusable neglect." *Waifersong*, 976 F.2d at 292. Only if the moving party makes this showing may the district court proceed to consider the other *United Coin Meter* factors. *Id.*

*Weiss*, 283 F.3d at 794.

The Bankruptcy Court used both tests enunciated by the Sixth Circuit. The Bankruptcy Court reconciled the two tests by considering the *Pioneer* factors in deciding whether Q Technology demonstrated excusable neglect, and requiring Q Technology to first show that the default judgment was not a result of "culpable conduct" as required by *Waifersong*. (Tr. 16-18).

On appeal, Q Technology first argues that the Bankruptcy Court abused its discretion by misapplying *Waifersong*. (Q Tech's Br. 9-10). Specifically, Q Technology argues that the Bankruptcy Court failed to liberally and equitably apply Rule 60(b)(1), as required by *Waifersong*, and should have considered Q Technology's meritorious defenses. (*Id.*) The Trustee responds that *Waifersong* clearly states that Q Technology "cannot be relieved of the Default Judgment unless it can first demonstrate that the default was a result of mistake, inadvertence, surprise or excusable neglect." (Trustee's Br. 5).

Q Technology relies on a 1998 Sixth Circuit Bankruptcy Appellate Panel decision, *In re Baskett*, 219 B.R. 754 (6th Cir. BAP 1998), in support of its position that the Court should balance the *Pioneer* factors.[1] In *In re Baskett*, 219 B.R. at 762, the Bankruptcy Appellate Panel (BAP) held that excusable neglect existed, under the *Pioneer* standard, and set aside the default judgment. The BAP did not discuss *Waifersong* in its opinion. However, the BAP first analyzed whether culpable conduct existed before moving on to the prejudice and meritorious defenses factors. *Id.* at 759-61. *In re Baskett*, therefore, does not support Q Technology's argument that this Court should balance the *Pioneer* factors. If anything it indicates that the culpable conduct factor should be analyzed first.

The Court concludes that the Bankruptcy Court properly applied *Waifersong*. As the Sixth Circuit explained in *Weiss*, 283 F.3d at 794, the moving party must first demonstrate that the default judgment did not result from culpable conduct. The court cannot consider the other elements, including whether the party has a meritorious defense, unless or until the moving party establishes excusable neglect. *Id.* The fact that the Sixth Circuit instructs courts to apply Rule 60(b)(1), "equitably and liberally . . . to achieve substantial justice," *Burrell v. Henderson*, 434 F.3d 826, 832

---

[1]This Court notes that BAP decisions are not binding precedent in this Court.

(6th Cir. 2002), does not change the order in which the *United Coin Meter* factors must be analyzed. Rather, the "equitably and liberally" instruction is a general rule that courts should consider in deciding a Rule 60(b)(1) motion, and does not change the fact that the court must first decide whether there is culpable conduct. Also, *Waifersong* is not the "island" or outlier that Q Technology would have this Court believe. *See e.g.*, *Burrell v.* Henderson, 434 F.3d 826, 832 (6th Cir. 2006); *In re Sterling Rubber Products Co.*, No. 04-8090, 2006 WL 348143, *5-6 (6th Cir. 2006); *Weiss*, 283 F.3d at 794; *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003); *Capitol Indem. Corp. v. Jellinick*, 75 Fed. Appx. 999, 1001 (6th Cir. 2003); *U.S. v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002) (all cases in which the Sixth Circuit applied *Waifersong* and first considered whether culpable conduct existed). Moreover, the Sixth Circuit has not overturned *Waifersong* and has not otherwise abrogated its decision in *Waifersong*. The Bankruptcy Court, therefore, properly applied *Waiferson* by analyzing the culpable conduct factor first.

Q Technology next argues that the Bankruptcy Court abused its discretion by construing Q Technology's motion strictly as a 60(b)(1) motion, when Q Technology had moved under Rule 60(b)(1) and 60(b)(6). (Q Tech's Br. 10). The Trustee argues that this Court should not consider Q Technology's argument based on Rule 60(b)(6) because Q Technology raised it for the first time on appeal, and did not present a Rule 60(b)(6) argument to the lower court. (Trustee's Br. 12).

Rule 60(b)(1) permits courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect," on a motion made within one year of the judgment. Rule 60(b)(6) is more expansive, and empowers the court to reopen a judgment even after one year has passed for "any other reason justifying relief from the operation of the judgment." In order to warrant relief under 60(b)(6), "a party must show 'extraordinary circumstances' suggesting that the party is

9

faultless in the delay." *See Pioneer*, 507 U.S. at 392-393, citing *Ackerman v. United States*, 340 U.S. 193, 197-200 (1950); *Klapprott v. United States*, 335 U.S. 601, 613-614 (1949). "If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable." *Pioneer*, 507 U.S. at 392-393.

Q Technology stated in its prayer for relief in its motion to set aside default judgment, "the Court should find that Q Tech's failure to answer the Complaint was not culpable conduct and that its dereliction is excused for purposes of Rule 60(b)(1) and/or (6)." (Def.'s Mot. 15). However, Q Technology did not make a Rule 60(b)(6) argument in its motion; it did not argue or show that extraordinary circumstances prevented it from responding to the complaint. Also, Q Technology specifically stated at the hearing before the Bankruptcy Court that Rule 60(b)(1), and specifically excusable neglect, was the basis for its motion. (Tr. 3).

Q Technology's insertion of a passing reference to 60(b)(6) in the prayer for relief–"and/or 60(b)(6)– not followed up in its brief or its argument, is not sufficient to raise the issue before the Bankruptcy Court. Moreover, Q Technology abandoned its 60(b)(6) argument at the hearing when it told the Bankruptcy Court that 60(b)(1) was the basis for its motion. Therefore, this Court will not consider Q Technology's Rule 60(b)(6) argument. *See Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986), quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716, at 651-54 (2d ed. 1983) ("'parties cannot . . . advance new theories or raise new issues in order to secure a reversal of the lower court's'" decision).

In addition, Q Technology has not shown or even argued, here or in the Bankruptcy Court, that extraordinary circumstances existed such to relieve it of the default judgment under Rule 60(b)(6). In fact, by Q Technology's admission, such extraordinary circumstances do not exist. As

10

stated above, in order to warrant relief under 60(b)(6), "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *See Pioneer*, 507 U.S. at 392-393. Q Technology admits the fault for the delay lies with Mr. Lee, who relied on his mistaken belief that service was improper to ignore the complaint. Because Mr. Lee was at fault for the delay, Q Technology is not entitled to relief under Rule 60(b)(6).

Next, Q Technology argues that the Bankruptcy Court erred by failing to consider whether Mr. Lee's conduct constituted a "mistake" under Rule 60(b)(1). (Q Tech's Br. 11). The Trustee responds that this Court should not consider Q Technology's "mistake" argument because Q Technology did not raise it before the Bankruptcy Court. (Trustee's Br. 11).

As recounted above, the Bankruptcy Court explicitly asked Q Technology whether excusable neglect was the basis of its motion, and Q Technology's attorney responded, "That's correct." (Tr. 3). The Bankruptcy Court later stated, "[a]rguably this motion might also be alleging or could possibly be viewed as alleging mistake within the meaning of Federal Civil Rule 60(b)(1). But the defendant is focusing on excusable neglect as the basis." (Tr. 14). Q Technology did not object to Bankruptcy Court's characterization of its motion. Thus, for the same reasons that this Court should not consider Q Technology's Rule 60(b)(6) argument, this Court also will not consider Q Technology's "mistake" argument. Q Technology did not raise it before the Bankruptcy Court, and/or abandoned it at the hearing.

The main issue before the Court is whether the Bankruptcy Court properly decided that Mr. Lee's mistaken belief that the complaint was not properly served constituted "culpable conduct" such that Q Technology's failure to respond to the complaint was not excusable neglect. *See Waifersong*, 976 F.2d at 292.

11

Q Technology argues that the Sixth Circuit Bankruptcy Appellate Panel has recognized that an attorney's misunderstanding of a procedural requirement qualifies as excusable neglect, so to should a non-lawyer's mistaken belief that service of the complaint was improper. (Q Tech's Br. 13-14). The Trustee responds that Q Technology cannot show that its conduct constituted neglect, much less excusable neglect, because Q Technology's conduct was intentional and a mistake of law is not an excuse to warrant relief under Rule 60(b)(1). (Trustee's Br. 6-9).

A party's conduct is culpable if it is motivated by an intent to thwart judicial proceedings, or shows a reckless disregard for the effect of the movant's conduct on those proceedings. *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986), *see also Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003).

Under the definition of culpable conduct articulated in *Shepard Claims Serv.*, Q Technology's failure to respond to the complaint and the Bankruptcy Court's summons was culpable conduct. By ignoring the complaint and summons, Q Technology showed a contempt for the judicial process and attempted to thwart the judicial proceedings. Mr. Lee, in deciding to ignore the complaint, relied on his mistaken belief that the service of the complaint was improper. Mr. Lee, who is not an attorney, decided to independently evaluate the method of service and deemed it insufficient. Mr. Lee did not consult an attorney in making this decision, even though he had a ten-year relationship with the Michigan law firm representing him in this appeal. As the Bankruptcy Court observed, Mr. Lee easily could have called his attorney to verify the proper methods of service; it is evident that his inaction was by a reckless disregard for the judicial proceedings. The summons from the Bankruptcy Court, which Q Technology received twice, clearly stated that Q Technology was required to respond within 30 days and warned Q Technology that its failure to

respond "will be deemed to be your consent to entry of a judgment by the Bankruptcy Court." Even with this notice, Q Technology decided to disregard the summons and chose to not file an answer. This decision was solely within Q Technology's control, it was not affected by outside factors beyond Q Technology's control, and was not the result of another party's negligence or incompetence. Q Technology's proactive decision to disregard the complaint and summons, therefore, was culpable conduct and constituted unexcusable neglect. Accordingly, the Bankruptcy Court's finding is affirmed.

Q Technology's reliance on *In re Baskett*, 219 B.R. at 754, to argue that Q Technology's refusal to respond to the complaint was excusable neglect, is misplaced. Again, this Court notes that BAP decisions are not binding on this Court. However, *In re Baskett* is easily distinguishable from the facts at bar. In *In re Baskett*, the defendant seeking relief from a default judgment was hospitalized and recovering from surgery during the time he was required to respond to the complaint. 219 B.R. at 760. The defendant did not directly receive the pleadings or a summons from the bankruptcy court; the pleadings were served on his attorney, who did not properly advise the defendant of the response deadline. *Id.* After receiving the default judgment, the defendant obtained new counsel and immediately became involved in the proceedings by moving to set aside the default judgment. *Id.*

First and foremost, as the BAP observed in *In re Baskett*, 219 B.R. at 760, this was not a case "where the defendant made a conscious choice not to respond." The case at bar is such a case. Q Technology consciously decided not to respond to the complaint and summons, even though it was appraised of the consequences of its failure to respond. No circumstances beyond Q Technology's control, such as a hospitalization, prevented Q Technology from promptly and actively engaging in

the judicial proceedings. Also, the defendant in *In re Baskett*, did not personally receive the pleadings; here, Mr. Lee received and disregarded the pleadings on Q Technology's behalf. Lastly, Q Technology was not improperly advised by an attorney. In fact, the only similarity that this case has to *In re Baskett* is that upon receipt of the default judgment, Q Technology immediately involved itself in the judicial proceedings. However, based on the conduct that caused the default judgment, Q Technology's promptness in attempting to set aside the default judgment does not excuse its disregard of the judicial proceedings up until the default judgment was entered, and Q Technology was obligated to re-pay the debtor's estate $170,217.19.

Q Technology consciously decided to disregard the summons and complaint. Q Technology conscious decision, made with actual knowledge of the consequences set forth on the summons and complaint, was an attempt to thwart the judicial proceedings and shows a reckless disregard for the effect of the its conduct on the proceedings. Accordingly, the Bankruptcy Court properly concluded that Q Technology's inaction was culpable conduct and, therefore, unexcusable neglect.

## IV. CONCLUSION

For the reasons discussed above, this Court find that the ruling of the Bankruptcy Judge was not an abuse of discretion, and thus AFFIRMS the Bankruptcy Court's October 22, 2008, Order Denying Defendant's Motion to Set Aside Default Judgment and for Leave to File an Answer and Affirmative Defenses.

SO ORDERED.

                                              S/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: May 1, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 1, 2009.

S/Denise Goodine
Case Manager